```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

---

```
   BLUE GENTIAN, LLC, NATIONAL     No. 1:13-cv-1758 (NLH/AMD)
   EXPRESS, INC., and TELEBRANDS
   CORP.,[1]                       OPINION

            Plaintiffs,

        v.

   TRISTAR PRODUCTS, INC. and
   WAL-MART STORES, INC. d/b/a
   SAM'S CLUB and SAM'S
   WHOLESALE CLUB,

            Defendants.
```

---

**APPEARANCES**:

THOMAS R. CURTIN
GEORGE C. JONES
GRAHAM CURTIN
A PROFESSIONAL CORPORATION
4 HEADQUARTERS PLAZA
P.O. BOX 1991
MORRISTOWN, NEW JERSEY 07962-1991
    On behalf of Plaintiffs

EDWARD F. MCHALE
BRIAN M. TAILLON
KENNETH W. COHEN
ANDREW D. LOCKTON
MCHALE & SLAVIN, P.A.
2855 PGA BOULEVARD
PALM BEACH GARDENS, FLORIDA 33410
    Appearing pro hac vice on behalf of Plaintiffs

EDWARD P. BAKOS
NOAM J. KRITZER
BAKOS & KRITZER

---

[1] By a June 19, 2017 Order, Telebrands Corp. ("Telebrands") was added as a party plaintiff and counterclaim defendant.

147 COLUMBIA TURNPIKE, SUITE 102
FLORHAM PARK, NEW JERSEY 07932
    On behalf of Defendants

**HILLMAN, District Judge**

This is an appeal from United States Magistrate Judge Ann Marie Donio's March 21, 2017 Order requiring Plaintiffs Blue Gentian, LLC and National Express, Inc. ("Plaintiffs") to produce an unredacted version of a September 1, 2015 Settlement and License Agreement ("the Agreement") between Plaintiffs and Telebrands.  Plaintiffs appealed the Order before this Court, arguing the Magistrate Judge committed clear error.  For the reasons that follow, this Court will affirm the decision.

**I.**

The Court takes its brief recitation of the facts from the Magistrate Judge's March 21, 2017 Order.  This case is a patent-infringement action relating to an expandable hose product. Plaintiffs allege Blue Gentian, LCC is the owner of U.S. Patent No. 8,757,213, which is a continuation of several other patents. Additionally, Plaintiffs allege Blue Gentian, LLC is the owner of U.S. Design Patent D722,681, which is a continuation in part of an earlier design patent.  Plaintiffs assert claims of direct infringement of these patents pursuant to 35 U.S.C. § 271(a) and indirect infringement of these patents pursuant to 35 U.S.C. § 271(b) and (c).  Defendants contest these claims and assert

counterclaims of noninfringement and invalidity against Plaintiffs.

On March 25, 2016, Defendants filed a Motion to Compel the production of an unredacted copy of the Agreement. This Agreement concerned litigation between Plaintiffs and Telebrands.[2] The litigation involved claims by Telebrands against Plaintiffs seeking declaratory relief that certain patents were invalid or not enforceable and that Telebrands was not infringing certain patents, and claims by Plaintiffs for infringement of certain patents. The Agreement originally produced by Plaintiffs was redacted. Specifically, Plaintiffs redacted Paragraphs 1.5, 1.6, 1.7, 5.4, 6.1, 6.2, and 6.3 in full, as well as Paragraph 3.1, in part.

After conducting oral argument and an in camera review of the Agreement, the Magistrate Judge granted Defendants' Motion to Compel. In making that decision, the Magistrate Judge ordered Plaintiffs to produce the Agreement "with Paragraphs 1.5, 1.6, 1.7, 3.1, 5.4, 6.1, 6.2, and 6.3 in their unredacted form." She further ordered "that counsel for Defendants shall maintain the unredacted Agreement on an Attorneys' Eyes Only basis and shall not share any portion with in-house counsel for

---

[2] Telebrands was a non-party at the time the Magistrate Judge rendered her decision on the Motion to Compel. By a June 19, 2017 Order, Telebrands is now a party plaintiff to this action.

Defendants."

The Magistrate Judge found the complete Agreement was discoverable upon consideration of the factors set forth in Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. May 28, 1970). The Magistrate Judge found the "confidentiality concerns . . . do not outweigh the relevance of the discovery to the determination of a reasonable royalty rate in this case." Specifically, the Magistrate Judge found "Paragraphs 1.5, 1.6, and 1.7 concern Plaintiffs' and Telebrands' ability to license the Patents-in-Suit," making them "relevant to the reasonable royalty analysis." The Magistrate Judge further found "Paragraphs 5.4, 6.1, 6.2, and 6.3 are also relevant to the determination of a reasonable royalty rate," as they "concern the ongoing business relationship between Plaintiffs and Telebrands." Finally, the Magistrate Judge found "Paragraph 3.1 . . . is relevant to a determination of whether the [lump sum settlement amount] constitutes a front end royalty."

On April 4, 2017, Plaintiffs appealed the Magistrate Judge's decision to this Court.[3]

---

[3]   On April 19, 2017, Plaintiffs moved to stay the Order to produce the unredacted Agreement. On May 8, 2017, the Magistrate Judge granted the stay. Accordingly, the unredacted Agreement has not yet been produced for Defendants.

**II.**

Federal Rule of Civil Procedure 72(a) provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.[4]

Thus, Rule 72(a) requires this Court adhere to a "clearly erroneous" or "contrary to law" standard of review. This standard requires the Court accord the Magistrate Judge "wide discretion." United States v. Sensient Colors, Inc., 649 F. Supp. 2d 309, 314-15 (D.N.J. 2009) (quoting Miller v. Beneficiary Mgmt. Corp., 844 F. Supp. 990, 997 (D.N.J. 1993)).

"A magistrate judge's decision is clearly erroneous 'when, although there may be some evidence to support it, the reviewing court, after considering the entirety of the evidence, is "left with the definite and firm conviction that a mistake has been

---

[4]   Local Civil Rule 72.1(c) provides similarly:

> Any party may appeal from a Magistrate Judge's determination of a non-dispositive matter within 14 days after the party has been served with a copy of the Magistrate Judge's order . . . . A Judge shall consider the appeal . . . and set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law.

5

committed."'" Id. at 315 (quoting Kounelis v. Sherrer, 529 F. Supp. 2d 503, 518 (D.N.J. 2008)). "A magistrate judge's decision is contrary to law when he or she has 'misinterpreted or misapplied applicable law.'" Id. (quoting Kounelis, 529 F. Supp. 2d at 518). "Particular deference is accorded to magistrate judges on discovery issues." Costa v. County of Burlington, 584 F. Supp. 2d 681, 684 n.2 (D.N.J. 2008).

"The burden of demonstrating clear error rests with the appealing party." Sensient Colors, 649 F. Supp. 2d at 315 (citing Kounelis, 529 F. Supp. 2d at 518).

### III.

The Court now considers whether the Magistrate Judge committed clear error in deciding the unredacted Agreement was discoverable or whether such decision was contrary to law.[5] As with the Magistrate Judge, this Court also conducted an in camera review of the unredacted Agreement in making its decision.

Federal Rule of Civil Procedure 26(b)(1) states, in pertinent part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." 35

---

[5] The Court makes no determination as to the admissibility of the Agreement. This Opinion and its accompanying Order relate solely to the discoverability of the Agreement.

U.S.C. § 284 provides: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer . . . ."  "When an established royalty does not exist, a court may determine a reasonable royalty based on 'hypothetical negotiations between willing licensor and willing licensee.'"  Wang Labs., Inc. v. Toshiba Corp., 993 F.2d 858, 870 (Fed. Cir. 1993) (quoting Fromson v. W. Litho Plate & Supply Co., 853 F.2d 1568, 1574 (Fed. Cir. 1988)).  Defendants assert the Agreement "may be relevant to the hypothetical negotiation analysis for calculating a reasonable royalty."  Further, Defendants assert the redacted terms "may be relevant to the calculation of the reasonable royalty by the Parties['] experts."

In considering whether the redacted paragraphs were relevant to what constitutes a reasonable royalty rate, the Magistrate Judge was guided by the factors set forth in Georgia-Pacific.  While Plaintiffs note this "analysis . . . was not propounded by any of the parties in their briefing on the motion to compel," Plaintiffs do not appear to argue the Georgia-Pacific factors were applied in error; rather, Plaintiffs take issue with the way the Agreement was analyzed under that test.

Like the Magistrate Judge, this Court applies "Federal Circuit law . . . when deciding whether particular written or

7

other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law." Advanced Cardiovascular Sys. v. Medtronic, 265 F.3d 1294, 1307 (Fed. Cir. 2001). The Federal Circuit "has sanctioned the use of the Georgia-Pacific factors to frame the reasonable royalty inquiry," finding "[t]hose factors properly tie the reasonable royalty calculation to the facts of the hypothetical negotiation at issue." Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1317 (Fed. Cir. 2011). Accordingly, the Court finds the Georgia-Pacific factors applicable here.

The Georgia-Pacific factors are as follows:

1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee;

       the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the license.

8. The established profitability of the product made under the patent; its commercial success; and its current popularity.

9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a

9

> royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee ho was willing to grant a license.

Ga.-Pac. Corp., 318 F. Supp. at 1120.

The Court first addresses Paragraphs 1.5, 1.6, and 1.7, which concern the scope of the license granted to Telebrands. The Magistrate Judge found "these Paragraphs relevant to the reasonable royalty analysis," guided by the Georgia-Pacific factors, relying in part on Georgia-Pacific factor four, which concerns "[t]he licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly." Plaintiffs argue disclosing these paragraphs is not supported by Georgia-Pacific factor four, arguing that "[a]ny such established policy . . . cannot be determined on the basis of any particular license agreement such as the one at issue here or even based on any single license agreement." Rather, Plaintiffs argue, "the granting of a license itself indicates that there was no established policy of not licensing others or limiting the grant of licenses. Evidence of an established policy regarding license agreements comes from outside a specific license agreement, such as directly from the patentee itself."

This Court finds the Magistrate Judge did not commit clear error in requiring Plaintiffs to produce Paragraphs 1.5, 1.6,

10

and 1.7 of the Agreement. First, this Court agrees that factor four supports disclosure as the Agreement itself could represent the "granting [of a] license[] under special conditions designed to preserve that monopoly," a standalone part of factor four.

Moreover, the Georgia-Pacific factors, as a whole, clearly support the production of these provisions. For example, Georgia-Pacific factor three, which concerns "[t]he nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold," also supports their production. Pursuant to Georgia-Pacific factor three, whether a license is exclusive or non-exclusive and any restrictions placed on the licensee is relevant to the determination of a reasonable royalty rate. This is precisely what is detailed in Paragraphs 1.5, 1.6, and 1.7. The scope of the license granted under the Agreement is certainly relevant in analyzing the royalty rate agreed to between Plaintiffs and Telebrands, which makes it relevant in determining a reasonable royalty rate in this case. Accordingly, the Court does not find the Magistrate Judge committed clear error in ordering Paragraphs 1.5, 1.6, and 1.7 be produced.

The Court next turns to the redacted portion of Paragraph 3.1, which provides the total amount to be paid by Telebrands for its sales of the product up to the time of the September 1,

11

2015 settlement. The Magistrate Judge found "Defendants are entitled to this information as the upfront payment is relevant to a determination of whether the amount constitutes a front end royalty." Plaintiffs contend "[t]he redacted lump sum is undoubtedly a settlement amount related to past sales, not future sales," and that "[t]he concept of a front end royalty, however, relates to royalties to be paid on future sales." Thus, Plaintiffs argue this settlement amount "does not relate to the Georgia-Pacific factors or determining a reasonable royalty rate." This Court agrees Paragraph 3.1 must be produced in its entirety.

This Court recognizes that lump sum awards for past infringement and forward looking reasonable royalty rates are different things. See Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1330 (Fed. Cir. 2009) (noting "certain fundamental differences . . . between lump-sum agreements and running-royalty agreements"); Novo Indus. L.P. v. Micro Molds Corp., 239 F. Supp. 2d 1282, 1288-89 (S.D. Fla. 2002) (rejecting as speculative a royalty based on the $675,000 lump sum payment for past infringement), rev'd on other grounds, 350 F.3d 1348 (Fed. Cir. 2003); Wang Labs., Inc. v. Oki Elec. Indus. Co., 15 F. Supp. 2d 166, 171 (D. Mass. 1998) (noting that "[m]onies received as a settlement for past tortious use of patents are not the equivalent of royalties"). That having been said, the

issue before the Magistrate Judge and the issue now before this Court is not admissibility but one of discoverability.  That a particular piece of evidence may not be ultimately persuasive on a contested issue is not the same as concluding that it is irrelevant or that it cannot be of some evidential or persuasive value on that same contested point.  Here, factor eleven of the <u>Georgia-Pacific</u> factors – the extent to which the infringer has made use of the invention and any evidence probative of the value of that use – appears to allow for consideration of infringement damages.

In sum, the Court finds this information is discoverable because it is some evidence of the value of the patent and may be one data point useful to experts or others in offering a reasonable calculation of a reasonable royalty rate.  Moreover, this evidence has the potential to uncover a link to a prior determination of a reasonable royalty rate.  Defendants are entitled to the opportunity to view this lump sum amount and determine whether a running royalty analysis influenced the calculation of the lump sum amount, as it is possible a determination of past royalties weighed in on the calculation of that amount, which would be relevant in determining a reasonable royalty rate in this case.  Accordingly, the Court does not find it was clear error for the Magistrate Judge to require production of Paragraph 3.1 in full.

The Court next turns to Paragraphs 5.4, 6.1, 6.2, and 6.3, which concern potential future litigation between the parties and the potential sale of Telebrands' expandable and contractible flexible hose business.  The Magistrate Judge found these paragraphs "relevant to the determination of a reasonable royalty rate," as they "concern the ongoing business relationship between Plaintiffs and Telebrands."  The Magistrate Judge relied in part on Georgia-Pacific factor five, which concerns "[t]he commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are investor and promotor."  Plaintiffs argue these paragraphs concern "separate business dealings of the ongoing business relationship between Plaintiffs and Telebrands" that "do[] not relate to the 'commercial relationship' Georgia-Pacific factor."

The Court finds Paragraph 5.4, relating to potential future litigation the parties may be involved in, can be considered to weigh in on the commercial relationship between Plaintiffs and Telebrands.  In discussing rights to bring future litigation against Telebrands, the parties are stipulating to the terms of their commercial relationship moving forward.  Accordingly, the Court finds the Magistrate Judge's Order requiring production of Paragraph 5.4 was not in error.

Turning to the final paragraphs at issue, in conjunction

14

with the discoverability of Paragraphs 1.5, 1.6, and 1.7, the Court finds Paragraphs 6.1, 6.2, and 6.3 also must be produced in order to fully comprehend Paragraphs 1.5, 1.6, and 1.7. Paragraph 1.6 directly references Paragraph 6.1. Paragraph 6.1, in turn, is expanded upon and given relevance through Paragraphs 6.2 and 6.3. Thus, it was not clear error for the Magistrate Judge to require production of Paragraphs 6.1, 6.2, and 6.3.

As the Magistrate Judge stated, and as Plaintiffs do not appear to contest, "[a] litigation-based settlement agreement for the patent in suit . . . falls within the universe of information . . . [and] is relevant to determining a reasonable royalty for purposes of Fed. R. Civ. P. 26(b)(1)." <u>Small v. Nobel Biocare USA, LLC</u>, 808 F. Supp. 2d 584, 590 (S.D.N.Y. 2011). Upon consideration of the <u>Georgia-Pacific</u> factors, the settlement agreement, as a whole, is relevant to determining a reasonable royalty rate here. In sum, the Court finds it was not clear error for the Magistrate Judge to require production of Paragraphs 1.5, 1.6, 1.7, 3.1, 5.4, 6.1, 6.2, and 6.3. The Court keeps the Magistrate Judge's "Attorneys Eyes Only" designation for the unredacted Agreement.

An appropriate Order will be entered.

Date: November 14, 2017         s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.